Ruffin,. C. J.
 

 This is an indictment for murder, found in Stokes, in which the assault is laid to have been committed in that county, and the death to have taken place in Patrick county, in Virginia. After conviction and sentence of death, the prisoner appealed to this court; and here a motion has been made in arrest of judgment, because the indictment does not conclude
 
 contra formam statuti.
 

 The court, after duly considering the argument in behalf of the prisoner, is under the necessity of holding that the indictment is properly framed.
 

 The act of 1777, in requiring, pleas of the State to be commenced in the district wherein the offence was committed, but followed the principle of the common law, that the cognizance of crimes is local. It seeems to the court, that the subesequent act of 1831, was intended for the sole pur- ' pose of modifying that provision in particular cases, by conferring a jurisdiction to try indictments for murder or manslaughter, where the whole offence was not perpetrated or was not fully constituted within one county or within this State. It provides, Rev. St. c. 35, s. 14,15, first, that “ in all eases of felonious homicide, where the assault shall have
 
 *119
 
 been committed in one county of this State and the person assaulted shall die in any other county thereof, the shall and may be indicted and punished for the crime in the county where the assault was madeand, in the next place, that “ in all cases oí felonious homicide, where the assault shall have been committed in this State, and the person assaulted shall die without the limits thereof, the offender shall and may be indicted and punished for the crime in the county where the assault was made, in the same manner to all intents and purposes as if the person assaulted had died within the limits of this State.” Here is no offence newly created, nor raised to a higher offence, nor an additional punishment annexed ; in any of which cases, it is admitted, the indictment ought to conclude
 
 contra formam statuti.
 
 In respect to a case, which occurs wholly in this State, the act is like that of 2 & 3 Ed. 6, c. 24, except that the English Statute directs the trial to be in the county wherein the person died. It enacts that
 
 “
 
 where any person shall be feloni-ously stricken in one county and die of the same stroke in another county, an indictment thereof, found by jurors of the county where the death shall happen, shall be as good and effectual in law as if the stroke had been given in the same county where the party shall die.”
 

 Mr. East says, this statute created no new felony, but merely removed the difficulty which existed in the trial. 1 East Cr. L. 365. Indeed it is obvious, that it provides only a mode of trial for a known existing offence, “where any person shall be feloniously stricken,” and die thereof, without defining or enacting what shall be such felonious striking, or what the punishment, but leaving that to the law as it stood. The same observations apply to another statute con--nected with this subject, that of 28 Hen. 8, c. 15, which provides for the case of both the stroke and death taking place at sea. The words are, “that all murders, &c. committed in and upon the sea, &c. shall be enquired, tried, determined and judged, in such shires as shall be limited by the King’s commission, as if such offence had been committed upon the land.” So, likewise, of Stat. 2 Geo. 2, c. 21, which embraces the case of the stroke in England, and the death
 
 *120
 
 without it. or
 
 vice versa.,
 
 of which the language is “that an '_indictment thereof, found by the jurors, &c. shall
 
 be good
 
 and effectual, &c.” In prosecutions authorized by those acts, indictments, as it seems, have always concluded at common law. Arch. Cr. Pl. 22, 57, 58. Dougherty’s Cr. Cir. 295. Cro. Cir. Com. 278, 281. 3 Chit. Cr. L. 783. it is true, offenders are thereby punished, who could not be punished before. But the reason, why they were not punishable before, was, solely, that no court had authority to try thorn. It was not because the crime did not exist, for the crime, murder, is the killing any person in the peace of the State, with malice aforethought, and that is constituted alike by killing with the evil disposition, be the places of assault and death where they may. Language of precisely the same character is found in our a-et. It does not say, that killing a person with malice, when the stroke is in one county, and death in another county or in another State shall be deemed murder-, or that on conviction the party shall be deemed a felon, and suffer death without the benefit of clergy. It does not profess to define I! felonious homicide,” or to constitute that crime by any particular acts, but merely says, that, in certain cases of felonious homicide, the offender may be indicted, and, of course, tried and punished in the county where (he stroke was given — meaning, though it does not, like St. 2 <fc 3, Ed. 6, expressly says so, “ in the same manner as if the death had happened in the same county where the stroke was given.” As the act of 28, Hen. 8, c. 15, says, “ all murders committed on the sea shall be tried in a shire,” by commission of oyer and terminer; so our act says, “ in all cases of felonious homicide, &c. where &c. the offender may be indicted, &c.” Besides, the character of our enactment may be further deduced from the circumstance that it is found in the Revised Statutes, in the 35th chapter on “ Criminal Pro. ceedings,” and not in the preceding chapter on
 
 “
 
 Crimes and Punishments.”
 

 It was, however, argued at the bar, that it was an essential part of the definition of murder, that the person slain should be in the peace of the State; and that, where the death occurs, in another State,, that requisite is deficient in the crime-
 
 *121
 
 at common law, and, therefore, it cannot be an offence against this State, unless made so by statute. And upon that a distinction was taken between the English statutes and ours, inasmuch, as it was said, the statutes both of Ed. 6, and’ of Hen. 8th provide for cases of killing, in which the whole of the transaction occurred either in England, or within the jurisdiction of England, as exercised by her admiralty court. But we think the reasoning is not sound. That part of the definition of murder expressed in the terms, “in the King’s peace,” refers not to the place of the assault and death, but to the state and condition of the person slain, as being or not being entitled to the protection of the English laws: for example, whether he be a subject or an alien enemy, or traitor in arms, or, in more ancient times, an infidel or guilty of a
 
 prc&munire.
 
 Then, it is also a mistake to say, that the acts are confined to cases, in which every part of the transaction was within the jurisdiction of England, either as being within some of her territories, or on board of her ships. The act of Geo. 2, before mentioned, provides for the case of one stricken in England and dying on the sea, or “ at any place out of Englandand we do not find that this has received a different construction from that of the previous statutes. We find an adjudication, however, upon another statute, which shews that the question does not depend on the ground supposed, but that the indictment is- to conclude at common law, although
 
 no part
 
 of the transaction was within the British dominions or jurisdiction. By the Stat. 33 Hen. 8, c. 33, it is enacted, “ that if any person, being examined before the King’s council upon any murder, do confess such offence, &c. then in such case a commission of oyer and terminer shall be made to such persons and into such shires and places as shall be appointed by the King, for the speedy trial, conviction or delivery of such offenders ; which commisioners shall have power and authority to enquire, hear, and determine such murders within the shires and places limited by their commission by such good and lawful men as shall be returned before them, in whatever other shire or place within the King’s dominions or
 
 without,
 
 such
 
 *122
 
 offence of murder, so examined, was done or committed.”— In
 
 Rex v
 
 Sawyer, Russ. & R. Cr. Ca. 294, a British subject was indicted for the murder of another British subject, “a(: Lisbon, in the kingdom of Portugal, in parts beyond sea without England,” and the indictment was at common law. The case was argued before the twelve judges, and they held that, being for a common law felony, committed abroad, but made triable in England, under the 33d Hen. 8th, the indictment was right. That judgment is directly in point, and is decisive of this case against the prisoner.
 

 It must therefore be certified to the Superior Court, that there is no error in the judgment given by that Court, in order that further proceedings may be had thereon according to law.
 

 Per Curiam. Ordered to be certified accordingly.